IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

JESSICA MARA KELLY CROXTON,   *
                              *
    Plaintiff,                *
                              *
        v.                    *    CV 620-078
                              *
J. SHAY KELLY DURDEN and      *
LAURABY SHANNON KEITH,        *
                              *
    Defendants.               *

## O R D E R

Before the Court is Defendants J. Shay Kelly Durden and Lauraby Shannon Keith's motion to dismiss. (Doc. 11.) For the following reasons, the motion is denied.

### I. BACKGROUND

This dispute between three sisters arises from their equal shares in a business. Plaintiff and Defendants are all daughters of the late Jerry Kelly. (See Compl., Doc. 1, ¶¶ 10, 14.) Jerry Kelly owned a successful business, Armour Barns of Statesboro, LLC ("Armour Barns"),[1] and bequeathed it in equal shares to his

---

[1] The Court takes judicial notice of the fact that Armour Barns is a Georgia limited liability company formed under Georgia law and registered with the Georgia Secretary of State. See Universal Express, Inc. v. SEC, 177 F. App'x 52, 53 (11th Cir. 2006) ("A district court may take judicial notice of certain facts without converting a motion to dismiss into a motion for summary judgment.

daughters, who inherited it after Mr. Kelly's passing in 2017. (See id. ¶¶ 11, 14, 16.) Plaintiff lives in New York and was born by a different mother than Defendants, who both live in Statesboro, Georgia. (See id. ¶¶ 1-3, 18.) Mr. Kelly was apparently concerned that Defendants may try to deprive Plaintiff of her interest in Armour Barns despite bequeathing it in equal shares to the three of them. (See id. ¶ 18.) Therefore, he drafted an operating agreement for Armour Barns that prevented the company from paying a salary of over $10,000 in a year to anyone without the consent of all three sisters. (See id. ¶ 20.) Mr. Kelly's intent with this agreement was to ensure Plaintiff received her share of Armour Barns' profits. (See id.)

Soon after Mr. Kelly's passing, Armour Barns' expenses and expenditures "skyrocketed." (Id. ¶ 24.) Plaintiff alleges the cause of this sharp increase was Defendants spending Armour Barns' money for personal purposes. (See id. ¶ 25.) Those include leased luxury vehicles and insurance for them (valued at over $90,000), vacation travel, electronics, and payments to another entity owned by Defendant Durden. (See id. ¶¶ 25-26, 62-68.) Plaintiff alleges that Defendants also began paying exorbitant wages to friends and family for little to no work in exchange. (See id. ¶ 29.)

---

. . . Public records are among the permissible facts that a district court may consider.").

2

According to Plaintiff, despite an increase in sales after Mr. Kelly's death, Armour Barns' books paint the company as a struggling one.[2] (See id. ¶ 31.) Using this depressed valuation, Defendants are now attempting to induce Plaintiff to sell her share of the company at an artificially deflated price. (See id. ¶ 32.)

Seeking to end these alleged abuses, Plaintiff filed an eight-count complaint asserting claims for, among others, breach of contract, breach of fiduciary duty, and violations of Georgia's Racketeer Influenced and Corrupt Organizations Act ("RICO"). Defendants now move to dismiss Plaintiff's complaint for failure to state a claim, arguing that all of Plaintiff's claims must be brought derivatively rather than directly. (See Br. in Supp. of Mot. to Dismiss, Doc. 12, at 3.)

## II.   JURISDICTION AND VENUE

Diversity jurisdiction under 28 U.S.C. § 1332 has been established.  Plaintiff is a citizen of New York, while both of the Defendants are citizens of Georgia.  The amount in controversy requirement is also met.  Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) because both Defendants are residents of

---

[2] Plaintiff nonetheless alleges that Armour Barns remains solvent and has no creditors requiring protection or whose interests would be affected by this action. (See id. ¶ 35.)

3

Statesboro, Georgia, which is within the Southern District of Georgia.

### III. LEGAL STANDARD

A motion to dismiss a complaint does not test whether the plaintiff will ultimately prevail on the merits of the case. Rather, it tests the legal sufficiency of the pleading. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), abrogated on other grounds by Davis v. Scherer, 468 U.S. 183, 191 (1984). Therefore, the Court must accept as true all facts alleged in the complaint and construe all reasonable inferences in the light most favorable to the plaintiff. See Hoffman-Pugh v. Ramsey, 312 F.3d 1222, 1225 (11th Cir. 2002). The Court, however, need not accept the pleading's legal conclusions as true, only its well-pleaded facts. Ashcroft v. Iqbal, 556 U.S. 662, 677-79 (2009).

A complaint must "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Id. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The plaintiff is required to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although there is no probability requirement at the pleading stage, "something beyond [a] mere possibility . . . must be alleged."

Twombly, 550 U.S. at 557-58 (citing Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005)). When, however, based on a dispositive issue of law, no construction of the factual allegations of the complaint will support the cause of action, dismissal is appropriate. See Exec. 100, Inc. v. Martin Cty., 922 F.2d 1536, 1539 (11th Cir. 1991).

## IV. DISCUSSION

Defendants argue that Plaintiff's suit should be dismissed for lack of standing because it was brought as a direct action rather than a derivative action. They also argue that Plaintiff has no standing to pursue her RICO claims.

A. Plaintiff's Claims are Properly Brought in a Direct Action

"[T]he question of whether an action is derivative (rather than direct) is a question of state law." Freedman v. MagicJack Vocaltec Ltd., 963 F.3d 1125, 1134 (11th Cir. 2020). In Georgia, "the general rule is that a shareholder seeking to recover misappropriated corporate funds may only bring a derivative suit." Thomas v. Dickson, 301 S.E.2d 49, 50 (Ga. 1983);[3] see also O.C.G.A

---

[3] Although Thomas deals with corporate shareholder lawsuits, the Court of Appeals of Georgia applies it to limited liability company member suits too. See, e.g., Sw. Health & Wellness, LLC v. Work, 639 S.E.2d 570, 577-78 (Ga. Ct. App. 2006) (applying exceptions to derivative suit rule found in Thomas to limited liability company member suit).

5

§ 14-11-801. However, there are two exceptions to the rule, and a stakeholder may bring a direct action in either case. See Barnett v. Fullard, 701 S.E.2d 608, 612 (Ga. Ct. App. 2010).[4] The first exception applies when the "suit alleges a special injury separate and distinct from that suffered by other shareholders, or alleges a wrong involving a shareholder contractual right existing apart from any right of the corporation." See id. (quoting Rosenfeld v. Rosenfeld, 648 S.E.2d 399, 403 (Ga. Ct. App. 2007)). The second exception, found in Thomas, recognizes an exception to the rule when the reasons supporting the derivative suit requirement do not exist. Thomas, 301 S.E.2d at 51. The four reasons underlying the derivative suit requirement are:

> 1) it prevents a multiplicity of lawsuits by shareholders; 2) it protects corporate creditors by putting the proceeds of the recovery back in the corporation; 3) it protects the interests of all shareholders by increasing the value of their shares, instead of allowing a recovery by one shareholder to prejudice the rights of others not a party to the suit; and 4) it adequately compensates the injured shareholder by increasing the value of his shares.

---

[4] To the extent Defendants argue that Plaintiff must establish both the Thomas exception and the "separate and distinct injury" exception, that is not the case. See Barnett, 701 S.E.2d at 613 ("Even if a shareholder fails to allege a special injury, he may bring a direct action if the corporation is closely held and [the Thomas exception applies]." (quotation omitted)). Likewise, Defendants' argument based on the pleading requirements of Federal Rule of Civil Procedure 23.1 fails because Plaintiff is not suing derivatively.

Id. (citations omitted).

In Thomas, the Supreme Court of Georgia found that the first and third reasons did not exist because the plaintiff was the only injured shareholder, meaning there was no risk of multiple lawsuits or prejudice to the rights of other shareholders. See id. The same is true in this case; Plaintiff is the only injured member of a three-member LLC. Therefore, there will only be one lawsuit, and because the other two members are Defendants in the case, the suit will not prejudice their rights as members.

The Thomas Court also found that the fourth reason did not exist because the corporation was closely held and thus there was no ready market for the plaintiff's shares should a successful derivative action increase their value. See id.; Ralph v. Whetsell, NO. 1:13-CV-4190-AT, 2014 WL 12284029, at *3 (N.D. Ga. May 28, 2014). The same is true here. Like the company in Thomas, Armour Barns has only three stakeholders. A recovery on behalf of Armour Barns through a derivative action would thus inadequately compensate Plaintiff because of the illiquidity of her interest in Armour Barns.

As for the second reason, Defendants argue that the Complaint introduces the "possibility of prejudice" to creditors, and therefore a direct recovery should not be allowed. See Thomas, 301 S.E.2d at 51 (stating that if a possibility of prejudice to

7

creditors exists, a direct recovery should not be allowed). Defendants also cite to Medlin v. Carpenter, 329 S.E.2d 159, 164 (Ga. Ct. App. 1985), in which direct action was precluded because "[t]he record contain[ed] unrebutted affidavits, attesting to various amounts of outstanding corporate indebtedness." Id. With these citations, Defendants attempt to argue that the existence of any creditor not party to the suit renders a direct action improper, then pointing to the creditors who leased the vehicles to Armour Barns. This argument is unconvincing, especially since the court in Thomas found that the company "was paying its debts as they came due, and that there was no outstanding or dissatisfied creditor." Thomas, 301 S.E.2d at 51. Therefore, the mere existence of a creditor does not necessitate a derivative action. Additionally, Plaintiff has specifically alleged that Armour Barns is solvent and has no creditors requiring protection or with interests that could be affected by this action. Therefore, at the present stage in proceedings, the Court finds that none of the four Thomas rationales underlying the derivative suit requirement are present, and Plaintiff may proceed with her direct action.

## B. Plaintiff Has Standing to Pursue Her RICO Claims

Defendants argue that Plaintiff lacks standing for her RICO claims because mere membership in a company that is the target of a RICO violation does not confer standing on a plaintiff. While

8

there is discussion of federal RICO claims in both Parties' briefs, the Complaint does not assert any federal RICO claims under 18 U.S.C. § 1964. Therefore, discussion is limited to standing for the Georgia RICO claims.[5] The RICO standing issue involves similar principles to those in the direct versus derivative suit context, but they are not identical.

"To have standing to bring a civil claim under Georgia's RICO Act, a plaintiff must not only show a pattern of racketeering activity, but also a 'direct nexus between at least one of the predicate acts listed under the RICO Act and the injury [the plaintiff] purportedly sustained.'" Rosen v. Protective Life Ins. Co., 817 F. Supp. 2d 1357, 1381 (N.D. Ga. 2011) (quoting Schoenbaum Ltd. Co. v. Lenox Pines, LLC, 585 S.E.2d 643, 655 (Ga. Ct. App. 2003)). "Thus, to survive a motion to dismiss, a plaintiff asserting a RICO claim must allege more than that an act of racketeering occurred and that she was injured. . . . Rather, she must show that her injury was the direct result of a predicate act targeted toward her, such that she was the intended victim." Wylie v. Denton, 746 S.E.2d 689, 694 (Ga. Ct. App. 2013) (citations omitted).

---

[5] Although, "Georgia's RICO statutes are essentially identical to the Federal RICO statutes. . . ." Hi-Tech Pharms., Inc. v. Hodges Consulting, Inc., 230 F. Supp. 3d 1323, 1333 (N.D. Ga. 2016) (internal quotation omitted).

9

In Schoenbaum, the Court of Appeals of Georgia found that a company's filing of a false tax declaration and the making of false representations to lenders did not satisfy the direct nexus requirement for the company's shareholders to sue directly. See Schoenbaum, 585 S.E.2d at 655. This was because these acts were directed at the State of Georgia and a bank, respectively. See id. In contrast, the Court of Appeals did find that the refusal of defendants to honor the plaintiffs' profit participation interest under a contract was sufficiently direct to support a RICO claim based on the predicate acts of theft by deception and conversion stemming from the breach of the contract.[6] See id. at 655-56.

Here, Plaintiff has adequately alleged that she was the target and/or intended victim of Defendants' predicate acts. Plaintiff alleges outright that the predicate acts of misappropriation were taken "with the specific intent to deceive and harm [her]." (Compl., ¶¶ 75, 92.) She also alleges that the Defendants intended to artificially depress the value of her membership interest in Armour Barns so they could buy her out at a reduced price. (Compl., ¶¶ 30-32; 70; 87.) Thus, construing the allegations in the light most favorable to the non-moving party, Plaintiff is directly

---

[6] Other questions of fact regarding the Schoenbaum plaintiffs' rights under the contract also supported the Court of Appeals' decision, including a right of first refusal and a nonassignment clause. See id.

10

harmed as a target of the predicate acts rather than only being harmed through her interest in the company. She therefore has standing to pursue her RICO claims.

V. CONCLUSION

Upon the foregoing, Defendants' motion to dismiss (Doc. 11) is **DENIED**.

**ORDER ENTERED** at Augusta, Georgia this 25th day of February, 2021.

_____
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA